IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SETH EDWIN KOCH,                          6:12-CV-00613-BR

          Plaintiff,                      OPINION AND ORDER

v.

ROBERT JESTER, KAREN BRAZEAU,
BOBBY MINK, COLETTE PETERS,
MAX WILLIAMS, GARY LAWHEAD,
MIKE COZNER, MICHAEL RIGGINS,
DARIN HUMPHREYS, DARWIN
CRABTREE, DAVID SCHRENK,
DAVID HANSEN, and JOHN AND
JANE DOES #1-10, each sued in
their individual and official
capacities,

          Defendants.


JESSE A. MERRITHEW
Levi Merrithew Horst LLP
610 S.W. Alder Street
Suite 415
Portland, OR 97205
(971) 229-1241

          Attorneys for Plaintiff


1 - OPINION AND ORDER

**ELLEN ROSENBLUM**
Attorney General
**HEATHER J. VAN METER**
Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301
(503) 947-4700

       Attorneys for Defendants

**BROWN, Judge.**

       This matter comes before the Court on Defendants' Motion

(#60) to Dismiss.  For the reasons that follow, the Court **GRANTS**

**IN PART** and **DENIES IN PART** Defendants' Motion.


                        **<u>BACKGROUND</u>**

       The following facts are taken from Plaintiff's First Amended

Complaint.

       On April 9, 2001, Plaintiff Seth Edwin Koch was indicted in

Deschutes County Circuit Court with five counts of Aggravated

Murder, five counts of Conspiracy to Commit Aggravated Murder,

two counts of Attempted Murder, one count of Assault in the

Second Degree, one count of Kidnapping in the First Degree, three

counts of Robbery in the First Degree, three counts of Burglary

in the First Degree, and two counts of Theft in the First Degree.

       On August 2, 2002, Plaintiff pled guilty to two counts of

Aggravated Murder, two counts of Conspiracy to Commit Aggravated

Murder, two counts of Attempted Murder, one count of Assault in

2 - OPINION AND ORDER

the Second Degree, one count of Kidnapping in the First Degree, and two counts of Robbery in the First Degree.

On August 14, 2002, Plaintiff was sentenced to a 90-month term of imprisonment on one count of Robbery in the First Degree. Disposition of the remaining counts to which Plaintiff pled guilty was continued for a penalty-phase trial.

At some point after August 14, 2002, Plaintiff was incarcerated at MacLaren Youth Correctional Facility because he was a minor.

On July 30, 2003, Plaintiff waived his right to a jury for the penalty phase and sentencing.  On August 14, 2003, Plaintiff was sentenced to two separate sentences of life in prison without the possibility of parole for the two counts of Aggravated Murder, 120 months for each of the two counts of Conspiracy to Commit Aggravated Murder, 70 months for one count of Assault in the Second Degree, and 90 months "for each of the remaining counts" to be served consecutively.

Plaintiff's incarceration was continued at MacLaren in the Secure Intensive Treatment Program (SITP) until Plaintiff was transferred to the custody of the Oregon Department of Corrections (ODOC).  Under SITP

> each offender achieved a level commensurate with
> his behavior, progress and other factors, which
> would be described by both a color corresponding
> to the level and a number corresponding to the
> number of weeks the offender has maintained that
> color level (*i.e.*, "Green 50" for 50 weeks at the

> Green level).  An offender who progressed in the
> behavior management system to higher levels
> enjoyed increased freedom and amenities.

Compl. at ¶ 51.

Plaintiff alleges the following with respect to SITP:

> Under SITP . . . an offender with any type of
> legal proceeding, including appeals or collateral
> attacks on his conviction, could not progress
> beyond a relatively low level of "Green 25."

> Under SITP . . . an offender who pursue[d] legal
> challenges to his convictions was precluded from
> participating in the Violent Offender Group, which
> was a requirement of SITP Defendants' treatment
> management system.

> Under SITP . . . offenders could face discipline
> or removal from SITP as a result of pursuing legal
> challenges to their convictions and their
> resulting non-participation in the Violent
> Offender Group.

> SITP and Doe Defendants threatened that, if
> Plaintiff insisted on pursuing his challenges to
> his convictions and sentences, he would be
> transferred to the adult prison.

Compl. at ¶¶ 52-55.

On April 8, 2010, Plaintiff was transferred from the custody
of the Oregon Youth Authority (OYA) to the custody of the Oregon
Department of Corrections (ODOC) because he was no longer a
minor.

On July 6, 2010, Plaintiff filed a petition for post-
conviction relief in Marion County Circuit Court.  Plaintiff had
appointed counsel to represent him in that matter.

On April 9, 2012, Plaintiff filed a *pro se* Complaint in this

4 - OPINION AND ORDER

Court pursuant to 42 U.S.C. § 1983 against numerous employees of OYA. Plaintiff alleged Defendants denied him access to and interfered with his access to the courts in violation of the First and Fourteenth Amendments to the United States Constitution.

On February 5, 2013, the Court appointed counsel to represent Plaintiff in this matter.

On August 16, 2013, Plaintiff filed an Amended Complaint against various Directors of OYA, Superintendents of MacLaren, and Treatment Managers at MacLaren alleging claims under § 1983 for denying him access to and interfering with his access to the courts in violation of the First and Fourteenth Amendments. Plaintiff seeks declaratory relief, injunctive relief, and damages.

On September 4, 2013, Defendants filed a Motion to Dismiss Plaintiff's Complaint. The Court took Defendants' Motion under advisement on October 4, 2013.

## STANDARDS

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. . . . The plausibility standard is not akin to a

5 – OPINION AND ORDER

> "probability requirement," but it asks for more
> than a sheer possibility that a defendant has
> acted unlawfully.  *Ibid.*  Where a complaint pleads
> facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line
> between possibility and plausibility of
> 'entitlement to relief.'"  *Id*. at 557, 127 S. Ct.
> 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  *See also Bell Atlantic*, 550 U.S. at 555-56.  The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff.  *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).


**DISCUSSION**

Defendants move to dismiss Plaintiff's claims on the grounds that (1) Plaintiff has not suffered an "actual injury," (2) portions of Plaintiff's claims are barred by the Eleventh Amendment, and (3) Plaintiff's claims against the Doe Defendants

6 – OPINION AND ORDER

are untimely.

**I.   Plaintiff has sufficiently pled an actual injury**

Plaintiff alleges in his First Amended Complaint that during his incarceration at MacLaren he did not have

> any access to counsel, legal assistants, online
> (or other) legal research resources or legal
> materials, including the state criminal code or
> rules of appellate procedure, federal statutory
> codes, any case law whatsoever, treaties on
> relevant legal matters, the Oregon Post-Conviction
> Relief Act, the Antiterrorism and Effective Death
> Penalty Act, or the state or federal
> constitutions.

Compl. at ¶ 37.  Plaintiff states OYA did not have any "provision for providing any type of legal assistance or materials to inmates."  Compl. at ¶38.  Plaintiff alleges if he "had access to legal materials during the limited time to file a notice of appeal [while he was at MacLaren], he would have filed that notice."  Compl. ¶ 34.  Plaintiff also alleges he would have timely filed for state post-conviction relief while he was at MacLaren if he had been given access to legal materials or assistance.  Compl. at ¶ 36.  Plaintiff alleges the "statute of limitations periods for filing a notice of appeal . . ., [a state] petition for post-conviction relief . . ., and [a federal] writ of habeas corpus . . . all expired while Plaintiff was confined at MacLaren."  Compl. at ¶ 36.  According to Plaintiff, therefore, Defendants violated his right of access to the courts when they "fail[ed] to assist Plaintiff in the preparation and

filing of a notice of appeal and petition for post-conviction relief," and, as a consequence, Plaintiff suffered an actual injury.  Compl. at ¶ 61.

Plaintiff also alleges he did not pursue direct appeal or post-collateral attack on his sentences because of SITP policies that could result in punishment for doing so via removal from SITP and possible transfer to adult prison for pursuing legal challenges to convictions.  Thus, Plaintiff alleges Defendants "actively interfer[ed] with Plaintiff's efforts to file a notice of appeal and petition for post-conviction relief," and, therefore, Plaintiff suffered an actual injury.  Compl. at ¶ 63.

Prisoners have a constitutional right of access to the courts to challenge convictions.  *Lewis v. Casey* 518 U.S. 343, 350 (1996).  "Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances." *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011)(citation omitted).  The Ninth Circuit has

> traditionally differentiated between two types of access to court claims:  those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference.  For example, in *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989), we explained that "a court must first determine whether the right of access claimant alleges . . . a denial of adequate law libraries or adequate assistance from persons trained in the

> law.   Second, if the claims do not involve such an
> allegation, the court must consider whether the
> plaintiff has alleged an 'actual injury' to court
> access."

*Silva*, 658 F.3d at 1102.

> With respect to the right to assistance, the
> Supreme Court has held "the fundamental
> constitutional right of access to the courts
> requires prison authorities to assist inmates in
> the preparation and filing of meaningful legal
> papers by providing prisoners with adequate law
> libraries or adequate assistance from persons
> trained in the law."  *Bounds*, 430 U.S. at 828.

*Id*.  The right to assistance is limited to "tools prisoners need

'in order to attack their sentences, [either] directly or

collaterally, and in order to challenge the conditions of their

confinement'" at "the pleading stage."[1]  *Id.* (quoting *Lewis*, 518

U.S. at 355).

With respect to noninterference, the Supreme Court has "held

. . . the First Amendment right to petition the government

includes the right to file other civil actions in court that have

a reasonable basis in law or fact."  *Silva*, 658 F.3d at 1102

(citing *McDonald v. Smith*, 472 U.S. 479, 484 (1985)).  "This

right does not require prison officials to provide affirmative

assistance in the preparation of legal papers, but rather forbids

states from erect[ing] barriers that impede the right of access

---

[1] The Ninth Circuit has defined the "pleading stage" to
"encompass[] the preparation of a complaint and the preparation
of any filings necessary to rebut the State's arguments when a
court determines that a rebuttal would be of assistance."  *Silva*,
658 F.3d at 1102 n.9 (quotation omitted).

9 - OPINION AND ORDER

of incarcerated persons." *Id*. (quotation omitted).

Finally, in *Silva* the Ninth Circuit held "prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials." *Id*. at 1103 (emphasis in original). In *Silva* the plaintiff alleged the defendants repeatedly transferred him between different prison facilities to hinder his ability to litigate his pending civil lawsuits; the defendants seized and withheld all of his legal files; and, as a result of the defendants' actions, several of the plaintiff's pending lawsuits were dismissed. The Ninth Circuit held the plaintiff adequately stated a claim for interference with his right to access to the courts and reversed the district court's order dismissing the plaintiff's claim for denial of access to the courts. *Id*. at 1104.

Defendants note in their Response that this matter involves both types of access to court claims: the right to assistance and the right to noninterference. Defendants also contend, however, that Plaintiff has not and cannot state a claim for violation of his right to access to the courts because Plaintiff was able to file a petition for state post-conviction relief (PCR) in 2010, which is still pending in the state courts, and, therefore, Plaintiff cannot truthfully allege he has suffered an

10 - OPINION AND ORDER

actual injury.

Even if Plaintiff's State PCR is not dismissed as untimely, which seems unlikely, the Court concludes Plaintiff has adequately pled a claim for violation of his right to access to the courts because Plaintiff has alleged he did not file a direct appeal because MacLaren did not have any law library or legal assistance available. As noted, the Ninth Circuit does not require an allegation of actual injury in access claims beyond the denial of legal assistance. *See Silva*, 658 F.3d at 1102 ("[A] court must first determine whether the right of access claimant alleges . . . a denial of adequate law libraries or adequate assistance from persons trained in the law. Second, *if the claims do not involve such an allegation*, the court must consider whether the plaintiff has alleged an 'actual injury' to court access."(emphasis added)). Accordingly, Plaintiff's ability to file a state PCR seven years after the court imposed his sentence is irrelevant to that claim.

In any event, the Court also concludes Plaintiff has adequately pled a claim for active interference with his access to the courts because Plaintiff alleges OYA policies "punished" inmates who attempted to pursue their legal remedies by capping the achievement level of inmates who challenged their sentences

to Green level 25[2] and by threatening possible transfer to adult ODOC facilities.  Because of those policies and his fear of being transferred to ODOC custody, Plaintiff alleges he did not file a direct appeal or state PCR until his transfer to ODOC custody in July 2010, by which time his direct appeal was time-barred.  The Court concludes those alleged policies are sufficient to constitute active interference with Plaintiff's access to courts, and, therefore, Plaintiff has adequately alleged an actual injury in his failure to file a direct appeal.

Accordingly, the Court denies Defendants' Motion to Dismiss Plaintiff's claims on the ground of failure to plead adequate injury.

## II.  Portions of Plaintiff's claims are barred by the Eleventh Amendment

Defendants move to dismiss Plaintiff's claims to the extent that Plaintiff seeks to sue Defendants in their official capacity for damages because the Eleventh Amendment bars actions for money damages against states and state actors.  Plaintiff concedes in his Response that the Eleventh Amendment bars claims for money damages against state officials sued in their official capacities

---

[2] According to Plaintiff under SITP each offender "achieved a level commensurate with his behavior, progress and other factors, which would be described by both a color corresponding to the level and a number corresponding to the number of weeks the offender has maintained that color level. . . .  An offender who progressed in the behavior management system to higher levels enjoyed increased freedom and amenities."  Compl. at ¶ 51.

12 – OPINION AND ORDER

and asserts he intends to seek money damages against Defendants only in their personal capacities.

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's claims to the extent that Plaintiff brings his claims seeking monetary damages against Defendants in their official capacities.

## III. Punitive damages

Defendants point out in a footnote that punitive damages are not available under § 1983 unless a plaintiff establishes a defendant was "motivated by evil motive or intent" or that a defendant acted with "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Because Plaintiff has not alleged facts showing "evil motive or intent" or reckless indifference in his First Amended Complaint, Defendants argue Plaintiff's claim for punitive damages must be dismissed.

The Court notes the Ninth Circuit has held "oppressive conduct is [also] a proper predicate for punitive damages under § 1983." *Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005). An act or omission is oppressive for the purpose of awarding punitive damages if it is "done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or

disability or the misfortunes of another person." *Id*. (quotation omitted).  Plaintiff does not plead in his First Amended Complaint that Defendants were motivated by evil motive or intent, acted reckless or callous indifference to Plaintiff's federally protected rights, or acted or failed to act in an oppressive manner.  Plaintiff, therefore, has failed to plead the requisite intent for punitive damages.

Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's claim for punitive damages for failure to state a claim, but grants Plaintiff leave to replead if he has sufficient facts to support such a claim under the standards set out herein.

**IV.  Injunctive relief**

In his First Amended Complaint Plaintiff seeks an injunction requiring Defendants to

> (1)  Provide Plaintiff with written admissions that:
>
> > (a)  While confined at MacLaren, Plaintiff was denied assistance in the preparation and filing of meaningful legal papers;
> >
> > (b)  While confined at MacLaren, Defendants interfered with Plaintiff's attempts to timely file a direct appeal or petition for post-conviction relief relative to his convictions and sentences; [and]
> >
> > (c)  As a result of the acts and omissions of Defendants, Plaintiff was foreclosed from filing a timely direct appeal and petition for post-conviction relief challenging his convictions and sentences;
>
> 2.  Join, and otherwise assist, Plaintiff in

14 - OPINION AND ORDER

> seeking leave to file untimely direct appeal and
> post-conviction relief petition.
>
> 3.    In the event that leave to file untimely
> direct appeal and post-conviction relief petition
> is denied, join in support of Plaintiff's efforts
> to seek a sentence commutation through Executive
> Clemency.

Compl. at 16-17.

Defendants contend Plaintiff's claims for injunctive relief
are "not the type [of relief] available to" Plaintiff because he

> does not seek . . . changes to OYA's practices
> regarding access to legal materials or legal
> assistance[, but instead] seeks to . . . force the
> OYA defendants to assist plaintiff with post-
> conviction relief and clemency, which are not
> actions any OYA defendants could effectively take.

Reply at 6.  Defendants also assert Plaintiff's claims for
injunctive relief are moot because Plaintiff is no longer at
MacLaren or in OYA custody.

In *Dilley v. Gunn* the defendant prison officials appealed a
district court order requiring the defendants to improve inmates'
access to the prison's law library.  64 F.3d 1365, 1367 (9th Cir.
1995).  The Ninth Circuit declined to address the "validity of
the district court's order granting injunctive relief because
[the] case became moot upon [the plaintiff's] transfer . . . to
another state prison facility."  *Id*.  Specifically, the Ninth
Circuit noted "an inmate's release from prison while his claims
are pending generally will moot any claims for injunctive relief
relating to the prison's policies unless the suit has been

certified as a class action." *Id*. at 1368.  The Ninth Circuit noted the matter had not been certified as a class action; the plaintiff had been transferred; and, accordingly, the matter was moot.  *Id*.

As in *Dilley*, this matter is not a class action and Plaintiff has been transferred out of OYA custody.

In *Dilley* the Ninth Circuit also rejected the plaintiff's contention that the matter was "capable of repetition, yet evading review" because "an inmate's 'claim of inadequate access to legal materials is not one that will evade review.'"  *Id*. at 1368-69 (quoting *Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985)).  The court noted "[t]he scores of cases in which we have reviewed claims by inmates that prison officials failed to provide adequate access to prison law libraries demonstrate that these cases do not generally evade review."  *Id*. at 1369 (citations omitted).  In addition, Plaintiff has not "demonstrated a reasonable expectation that he will be transferred back to [MacLaren] and subjected again to law library policies [allegedly] depriving him of meaningful access to the courts."  *Id*.  In fact, Plaintiff is no longer a minor and, therefore, it is no longer possible for him to return to OYA custody.

Based on *Dilley* and the related cases, the Court concludes Plaintiff's claim for injunctive relief is moot, and, therefore,

16 - OPINION AND ORDER

the Court grants Defendants' Motion to Dismiss Plaintiff's claims for injunctive relief.[3]

## CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion (#60) to Dismiss as follows:

1.  **DENIES** Defendants' Motion to Dismiss Plaintiff's claims for denial of access to and interference with access to the courts in violation of the First and Fourteenth Amendments;

2.  **DENIES** Defendants' Motion to Dismiss Plaintiff's claims for declaratory relief;

3.  **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims against Defendants in their official capacities;

4.  **GRANTS** Defendants' Motion to Dismiss Plaintiff's claim for punitive damages with leave to amend as provided herein; and

5.  **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims for injunctive relief.

Plaintiff's Second Amended Complaint shall be filed no later

---

[3] It is unclear whether Defendants seek dismissal of Plaintiff's claims for declaratory relief, but the cases relied on by Defendants address only injunctive relief. In any event, the Court concludes Defendants did not provide any basis for dismissal of Plaintiff's claims for declaratory relief to the extent that Defendants seek such a dismissal.

17 - OPINION AND ORDER

than **December 19, 2013**, and Defendants' responsive pleading in the form of an Answer shall be filed no later than **January 6, 2014**.  If Plaintiff does not file a Second Amended Complaint, this matter will proceed on Plaintiff's First Amended Complaint as modified by this Opinion and Order, and Defendants' Answer thereto is due **January 6, 2013**.

IT IS SO ORDERED.

DATED this 9th day of December, 2013.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER